UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KIRBY PEMBERTON, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:14-cv-01421 AGF |
| REPUBLIC SERVICES, INC., et al., | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Defendants bring a motion (Doc. No. 53) to quash a subpoena issued by Plaintiffs to Pelopidas, LLC, a non-party public relations company hired by Defendants' attorney, or in the alternative, to grant a protective order against disclosure of the materials in question. Defendants argue that all the materials requested by Plaintiffs are protected by the attorney-client privilege or the work product doctrine. For the reasons stated below, the Court finds that the attorney-client privilege does not extend to a public relations consultant on the facts of the case. However, the Court finds that the materials are protected by the work product doctrine, and Plaintiffs have not met their burden to overcome the protection provided by that doctrine. Accordingly, the motion to quash shall be granted.

# BACKGROUND

The Bridgeton Landfill ("Landfill"), a federal Superfund Site since 1990, is an inactive landfill that is part of a larger complex of landfills, located in Bridgeton,

1

Missouri. The Landfill is owned and managed by Defendant Bridgeton Landfill, LLC, a subsidiary of Defendant Republic Services, Inc. In late 2010, elevated temperatures were detected in some of the Landfill's gas extraction wells. After testing, it was discovered that a "subsurface smoldering event" was occurring deep within the southern part of the Landfill. A subsurface smoldering event is a chemical reaction, usually caused by the decomposition of materials within a landfill, and characterized by temperatures exceeding 170 degrees Fahrenheit.[1] In early 2012, local residents began noticing a foul odor apparently emanating from the Landfill, and the odor remains an ongoing issue in the vicinity of the Landfill.

The events at the Landfill have given rise to extensive litigation against Defendants. As of the date of this Order, Defendants have been sued 38 times since 2013 regarding activities and events at the Landfill. *See* Doc. No. 53 at 1-2. The situation at the Landfill has also been the focus of intense media scrutiny. In order to help manage Defendants' response to media coverage, in 2013, defense counsel hired a national public relations firm, which in turn hired Pelopidas to serve as local public relations consultants for counsel and Defendants.

Plaintiffs filed this putative class action against Defendants in federal district court on August 15, 2014, asserting negligence and nuisance claims arising out of the odor, pollution, and emissions allegedly emanating from the Landfill. On February 24, 2015, Defendants received a subpoena directed at Pelopidas, requesting all "documents,

---

[1] *See* Int'l Union of Pure and Applied Chemistry, *Compendium of Chemical Terminology*, 1207, (Ver. 2.3.3, Feb. 24, 2014, *available at* http://goldbook.iupac.org/PDF/goldbook.pdf.

communications, records, tapes, recordings, transcripts, directives, e-mails, powerpoints, texts, scripts, agreements and/or memoranda concerning or relating to any public relations work relating to the fires and/or smoldering event" at the Landfill.  (Doc. No. 62-2 at 5.)  In response, Defendants produced 15 documents, along with a privilege log, while withholding 81 purportedly privileged documents and videos.  As required by Local Rule 37-3.04(A), the parties conferred in good faith, but were unable to reach an accord with regard to the disputed materials.  On March 27, 2015, Defendants filed the instant motion to quash, which the parties thereafter fully briefed.  On May 5, 2015, the Court ordered Defendants to produce for *in camera* inspection all the disputed materials, to which order Defendants timely complied, and the Court has reviewed all the withheld materials.

## THE PARTIES' ARGUMENTS

Defendants argue that the withheld materials are protected by the attorney-client privilege or, in the alternative, the work product doctrine.  Regarding the attorney-client privilege, Defendants assert that an attorney-client relationship existed between counsel, Pelopidas, and Defendants, and that Pelopidas' services were necessary to aid counsel in their rendering of legal advice to Defendants.

In support of this argument, Defendants provide the declarations of William G. Beck and Jessica E. Merrigan, both of whom serve as counsel for Defendants.  (Doc. Nos. 55-1 and 55-2.)  In his declaration, Mr. Beck states that negative publicity around Defendants had created an environment that threatened to make defending the litigation far more difficult than it would otherwise be, and he engaged Pelopidas to help mitigate

3

that risk. Ms. Merrigan states that she worked on an "almost-daily basis" with Pelopidas as part of the litigation team, that no statement was released by Pelopidas without counsel's prior approval, and that Pelopidas' role was not restricted to providing routine public relations advice, but rather, was to consider how all communications would affect prospective litigation. (Doc. No. 55-2 at 1-2.) Defendants also assert that all communications between Pelopidas and Defendants were "made to convey the information to counsel in its representation of Defendants," and thus, all such communications were protected by the attorney-client privilege. (Doc. No. 54 at 10.)

In the alternative, Defendants maintain that the documents and videos are protected by the work product doctrine. Defendants assert that where, as here, a "public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation," the work product doctrine applies. (Doc. No. 54 at 10.) Defendants contend that all of Pelopidas's work was directed and overseen by counsel, and is protected as work product because it was prepared in anticipation of litigation by an agent of Defendants' counsel. Defendants further assert that Plaintiffs can show neither a substantial need for the disputed materials, nor an undue hardship that would result without the materials, because the materials at issue would not assist Plaintiffs in establishing the elements of negligence or nuisance alleged by Plaintiffs.

In response, Plaintiffs argue that the attorney-client privilege is limited to legal advice, and Defendants have failed to establish that Pelopidas's public relations work was

4

legal in nature. Plaintiffs maintain that a "media campaign is not legal advice, and an attorney's participation in such a campaign does not render internal communications about the public relations campaign privileged." (Doc. No. 62 at 11.) Plaintiffs argue that the communications and documents prepared by Pelopidas were simply part of an effort to "spin the media" in favor of Defendants. (*Id.* at 8.) Plaintiffs also assert that the work product doctrine does not protect Pelopidas' public relations activities, because, while the doctrine may protect documents "prepared for one's defense in a court of law, it does not protect documents that were merely prepared for one's defense in the court of public opinion." (*Id.* at 13.)

Plaintiffs also assert that the privilege log submitted by Defendants was insufficient to evaluate the propriety of Defendants' claims, as not enough information was provided to determine whether an attorney authored certain documents, or was merely a passive recipient of the documents. As such, Plaintiffs asked the court to review the disputed materials *in camera* to evaluate Defendants' claims.

In reply, Defendants reiterate their argument that the materials are protected by both the attorney-client privilege and work product doctrine. In support of their argument that the public relations work performed by Pelopidas was central to their legal strategy, Defendants describe in more detail how the situation at the Landfill led to "frequent and impassioned public debate" as well as intense media coverage regarding the risks the Landfill may pose to public health and the environment. (Doc. No. 65 at 4.) When counsel engaged Pelopidas, the Landfill had already been sued twice and was threatened with other suits, including an enforcement action by the Missouri Department

5

of Natural Resources.[2]  Defendants argue that it was evident that additional litigation would be filed in the near future, and defense counsel determined that "participating in the public debate would be essential to prevent additional and frivolous litigation;" thus, they engaged Pelopidas to guide them as they commenced active participation in the ongoing public debate.  (*Id.* at 5.)  Defendants submitted with their reply an affidavit from Pelopidas (Doc. No. 65-1), as well as an amended declaration from Mr. Beck (Doc. No. 65-2), each of which elaborate on the assertion that Pelopidas was engaged for litigation purposes, and not for general public relations consulting.  Mr. Beck indicates in his declaration that Pelopidas was brought onto the litigation team in order to guide efforts to provide consistent and accurate information to the public, and with a primary goal of not simply affecting public opinion, but of protecting Defendants during ongoing litigation.  Defendants argue that Pelopidas and counsel were "[a]ttempting to influence media and create a legal climate" where individuals would be less likely to sue the Landfill, and that such activities are "well within the confines of an attorney's duties" and thus, the resulting documents and communications are privileged.  (Doc. No. 65 at 6-8.)

Defendants go on to argue that the effect of public statements on pending and anticipated litigation was always Pelopidas's primary consideration, and all documents and communications were protected work product reflecting counsel's input. Furthermore, Defendants assert that Plaintiffs cannot overcome that protection, as Plaintiffs "have neither shown nor even attempted to argue a substantial need for the work product."  (*Id.* at 12.)  Defendants also argue that Plaintiffs could not establish a

---

[2]  *See Mo. ex rel. Koster v. Republic Servs., LLC*, Case No. 13SL-CC01088, currently pending in Missouri state court.

need for the materials, since the complaint involves only issues of negligence and nuisance, and the subpoenaed materials would not aid in determining either liability or damages in the underlying case. Defendants assert that because the materials are not needed by Plaintiffs, the discovery request is apparently "designed to embarrass or harass." (*Id.* at 13.)

In reply to Plaintiffs' allegations that the privilege log was insufficient, Defendants charge that Plaintiffs had never before voiced any objection to the log, and that the log described the withheld documents in requisite detail. However, Defendants also submitted an amended privilege log with their reply, which they argue is likewise sufficiently detailed to enable Plaintiffs and the Court to evaluate their claims of privilege.

In Plaintiffs' surreply, Plaintiffs re-assert that materials produced during efforts undertaken to influence public opinion in anticipation of litigation are not legal in nature, and cannot be protected by either the attorney-client privilege or work product doctrine. As to the privilege log, Plaintiffs assert that the log still fails to establish that the underlying documents are privileged. Finally, Plaintiffs object to Defendants' characterization of the subpoena at issue as "only designed to embarrass or harass." Plaintiffs argue that the materials were properly requested, as they are relevant to the smoldering event at the Landfill, and their relevance is unaffected by whether or not they may reveal an "effort to spin the public (or worse)," even though that may indeed embarrass Defendants. (Doc. No. 72 at 2.) Plaintiffs have not responded to Defendants' assertion that Plaintiffs made no attempt to establish a substantial need for

7

the withheld materials.

## APPLICABLE LAW

*Attorney-Client Privilege*

Under Federal Rule of Civil Procedure 26(b)(1), litigants may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In this diversity action, Missouri law governs the existence and scope of the attorney-client privilege. Fed. R. Evid. 501; *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). In Missouri, the attorney-client privilege has been statutorily codified, Mo. Rev. Stat. § 491.060(3),[3] and the privilege "protects 'any professionally-oriented communication between attorney and client regardless of whether it is made in anticipation of litigation or for preparation for trial.'" *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No. 4:05 CV 1934 DDN, 2012 WL 1389708, at *7 (E.D. Mo. Apr. 23, 2012) (quoting *State ex rel. Tillman v. Copeland*, 271 S.W.3d 42, 45 (Mo. Ct. App. 2008). The Missouri statute has been construed to be declaratory of the common law rule, and the attorney-client privilege is to be construed broadly to encourage its fundamental policy of encouraging uninhibited communication between the client and his attorney. *See State ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d 379, 382 (Mo. 1978). "The privilege does not attach unless the communication involves the attorney and the client and is made to obtain legal advice." *Olga Despotis Trust v. Cincinnati Ins. Co.*, No. 4:12CV02369 AGF, 2014 WL 2611824, at *2 (E. D. Mo June

---

[3] The statute states in pertinent part that, "[t]he following persons shall be incompetent to testify: . . . (3) An attorney, concerning any communication made to the attorney by such attorney's client in that relation, or such attorney's advice thereon, without the consent of such client." Mo. Rev. Stat. § 491.060(3).

11, 2014).   All such communications and "materials subject to the attorney-client privilege are not discoverable; even if the opposing party can show a substantial need for them and establish that it would suffer undue hardship in acquiring their substantial equivalent."   *Id*. at *3.   The party asserting the privilege "bears the burden of proof to demonstrate that the privilege applies."   *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 116 (Mo. Ct. App. 2012) (citation omitted).

*Work Product Doctrine*

Federal law governs the work product doctrine in diversity cases.   *Baker*, 209 F.3d at 1053.   The work product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides in relevant part that "a party may not discover documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or its representative" and discovery of such items may be compelled only upon a showing that the party seeking discovery has "substantial need of the materials."   The work product doctrine was designed to prevent "unwarranted inquiries into the files and the mental impressions of an attorney," *Hickman*, 329 U.S. at 510, and recognizes that "a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel" is vital.   *Id*.   To be protected under the doctrine, materials must have been prepared "because of the prospect of litigation."   *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002).

The work product doctrine is "distinct from and broader than the attorney-client privilege."   *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).   "The work product

9

doctrine is broader than the attorney-client privilege because its protections extend beyond communications between the attorney and client." *Monarch Fire Prot. Dist. of St. Louis Cnty. v. Freedom Consulting & Auditing Servs., Inc.*, No. 4:08CV01424 ERW, 2009 WL 2155158, at *1 (E.D. Mo. July 16, 2009); *see also Nobles*, 422 U.S. at 238 (stating that work product protection encompasses much that has its source outside attorney-client communications). The doctrine extends to notes, memoranda, interviews, and other materials, regardless of whether they were created by an attorney or by an agent for the attorney. *Nobles*, 422 U.S. at 238-39; *In re Copper Mkt. Antitrust Litigation*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) ("Once it is established that a document was prepared in anticipation of litigation, work-product immunity protects documents prepared by or for a representative of a party, including his or her agent."). Where a document was created because of anticipated litigation, and "would not have been prepared in substantially similar form but for the prospect of . . . litigation, it falls within Rule 26(b)(3)." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). Work product immunity is not limited to materials prepared in anticipation of the litigation for which discovery is sought. *In re Murphy*, 560 F.2d 326, 333-34 (8th Cir. 1977). Rather, the immunity attaches so long as the materials were prepared in anticipation of some litigation by a party to the present litigation. *United States v. R.M. Dolgin, Inc.*, No. 4:96M6320 SNL, 1997 WL 732495, at *1 n.1 (E.D. Mo. June 20, 1997).

The party seeking protection under the work product doctrine bears the burden of establishing that the documents were prepared in anticipation of litigation. *PepsiCo, Inc.*, 305 F.3d at 817. If the doctrine is found to apply, the party seeking discovery bears the

burden of showing a "substantial need for the materials" and that it cannot otherwise obtain the substantial equivalent of the materials without "undue hardship." *Id*.

*Power to Quash the Subpoena*

Rule 45 of the Federal Rules of Civil Procedure provides the specific rules governing subpoenas directed at nonparties. Fed. R. Civ. P. 45. Relevant here is subsection (d)(3), which requires a court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(iii).

## ANALYSIS

*Attorney-Client Privilege*

Upon review of the parties' arguments, the declarations submitted, and *in camera* inspection of the materials at issue, the Court concludes that none of the disputed materials are subject to the attorney-client privilege. The privilege does not attach unless the communication "involves the attorney and the client and is made to obtain legal advice." *Olga Despotis Trust*, 2014 WL 2611824, at *2. There is some precedent under the federal common law for expanding the privilege to include communications between a party and a public relations consultant. *See, e.g., In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (extending attorney-client privilege to communications between counsel and public relations firm where public relations firm was hired to create a climate in which government may be less inclined to prosecute the client); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 219 (extending attorney-client privilege to communications between public relations firm and counsel where public relations firm was hired to facilitate a Japanese client's dealings with western media

11

concerning ongoing litigation). But Defendant has not directed the Court's attention to any Missouri cases addressing expansion of the privilege to communications with public relations consultants, and the Court has found no such cases. Furthermore, the Supreme Court has cautioned that evidentiary privileges should be narrowly construed and expansions cautiously extended. *See Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990).

The materials at issue here were created because of the prospect of litigation, as discussed in more detail below, and the communications with Pelopidas may have helped counsel shape their legal strategy. However, it does not appear that defense counsel was reliant on Pelopidas's expertise in order to give appropriate legal advice to Defendants. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691(LAK) (JCF), 2013 WL 3805140, at *3 (S.D.N.Y. July 19, 2013) (holding that "[s]uch communications, although they may assist counsel in formulating legal advice, are not generally protected by the attorney-client privilege").

Furthermore, the Court's *in camera* inspection of the materials reveals that none of the documents actually involved communications directly between counsel and the client. The majority of the documents are internal communications among employees at Pelopidas, many of which reflect prior verbal communications between Pelopidas and counsel. Of the remainder of the materials at issue, most involved communications between Pelopidas and counsel, some of which were shared with Defendants, or were communications between Pelopidas and Defendants, with counsel copied on such. Simply put, the materials at issue were not communications between a client and its

counsel made in confidence for the purpose of obtaining legal advice, and thus, are not protected by the attorney-client privilege.

*Work-Product Doctrine*

The Court finds, however, that the disputed documents and videos are protected by the work product doctrine. All the materials were created by a party and its attorney or an agent of the attorney, and would not have been prepared in substantially similar form but for the prospect of litigation. The Court's review of the documents shows that counsel, their clients, and Pelopidas worked closely together in discussing the information to be provided to the public, all with a view to the impact on future litigation. All of the materials in question were created in an effort to foster a public environment that was less likely to lead to further litigation involving the Landfill. As stated in Mr. Beck's amended declaration, defense counsel retained Pelopidas as a consultant "to provide public relations advice related to the litigation already occurring and the litigation we believed was coming." (Doc. No. 65-2 at 6.) As further stated by Ms. Merrigan, all the materials created by Pelopidas were "created at the direction of counsel, in anticipation of litigation." (Doc. No. 55-2 at 2.) Upon review of the materials, the Court is persuaded that this was indeed the case. The prospect of litigation was very real, as demonstrated by the quick proliferation of lawsuits against Defendants, beginning in 2013 and continuing to the present. Trying to address the media climate in which defense counsel was operating while attempting to provide information to the public was a legitimate activity, and within the scope of proper litigation strategy. Other courts have extended work product protection to public relations work in similar situations. *See, e.g, ADT Sec. Servs., Inc. v.*

*Swenson*, Civ. No. 07-2983 (JRT/AJB), 2010 WL 2954545, at *5 (holding that public relations documents created to address media scrutiny were work product as they reflected mental impressions of counsel); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55-56 (S.D.N.Y. 2000) (extending work product protection to materials produced by public relations consultant hired by attorney to help manage publicity surrounding client).

To overcome the protection provided under the doctrine, Plaintiffs must demonstrate that they have substantial need of the materials in question, and that they cannot otherwise obtain the substantial equivalent of the materials without undue hardship. *See PepsiCo, Inc.*, 305 F.3d at 817. What "substantial need" is depends on the facts and circumstances of the individual case, but it is certainly more than mere tangential relevance to the case. There can be no substantial need for documents or other materials that do not bear on a material fact at issue in the underlying case. *Bradley v. Wal-Mart Stores, Inc.*, 196 F.R.D. 557, 558 (E.D. Mo. 2000) (holding that there can be no substantial need for materials that are not essential to the requesting party's prima facie case).

Here, Plaintiffs do not argue that they have demonstrated the requisite substantial need. In fact, and as accurately pointed out by Defendants, Plaintiffs' memoranda in response to Defendants' motion are entirely silent on the point.[4] Plaintiffs argue that the materials are not protected by either the attorney-client privilege or the work product doctrine, and seem to rest on the hope that the Court will simply agree on both points. In

---

[4] Defendants assert that, "Plaintiffs have neither shown nor even attempted to argue a substantial need for the work product and an inability to obtain the materials' substantial equivalent without undue hardship. Likewise, Plaintiffs have not demonstrated any hardship they would suffer if the materials are withheld." (Doc. No. 65 at 12.) And, after Defendants highlighted Plaintiffs' failure to argue substantial need for the withheld materials, Plaintiffs again made no such assertion in their surreply.

any event, the Court's *in camera* review of the documents and videos does not suggest any substantial need for the materials in question.

In light of the Court's *in camera* review of the materials at issue, and the Court's resulting conclusion that the withheld materials are protected by the work product doctrine, the Court need not address Plaintiffs' assertions regarding the adequacy of Defendants' privilege log. Furthermore, having found it appropriate to grant Defendants' motion to quash the subpoena, it is unnecessary to address Defendants' alternative request to grant a protective order against disclosure.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion (Doc. No. 53) to quash Plaintiffs' subpoena directed at Pelopidas is **GRANTED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of June, 2015.