**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| KIRBI PEMBERTON, GINA MELISSA WILFONG, JANICE JAPA, PRESTIGE ELECTRONICS, LLC, and CORNELL SPARKS, individually and on behalf of all others similarly situated, | ) ) ) ) No. 4:14-cv-01421-AGF |
| | ) |
| Plaintiffs, | ) FILED UNDER SEAL |
| | ) |
| v. | ) |
| | ) |
| REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, d/b/a Republic Services of Bridgeton, and BRIDGETON LANDFILL, LLC, | ) ) ) |
| | ) |
| Defendants. | ) |

## [PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kirbi Pemberton, Gina Melissa Wilfong, Janice Japa, Prestige Electronics, LLC and Cornell Sparks (collectively, "Plaintiffs"), bring this class action on behalf of themselves and all others similarly situated against Defendants Republic Services, Inc., Allied Services, LLC, d/b/a Republic Services of Bridgeton and Bridgeton Landfill, LLC (collectively, "Defendants"), and allege as follows based on: (a) personal knowledge; (b) the investigation of their counsel; and (c) information and belief.

### I.    NATURE OF THE ACTION

1.    Plaintiffs bring this negligence and nuisance civil action on behalf of owners and renters of residential real property located in the "Class Area," which includes all properties located within a 3 mile radius measured from the center of the quarry containing the Bridgeton Sanitary Landfill (or "Bridgeton Landfill"), individuals who are employed and work within the Class Area, and businesses located within the Class Area (as set forth below).

2.    There is currently a subsurface fire, subsurface oxidation event, subsurface smoldering event, and/or subsurface pyrolysis (hereinafter "subsurface fire") at the Bridgeton

Landfill, located at 13570 St. Charles Rock Road in Bridgeton, St. Louis County, Missouri, which was first reported to the Missouri Department of Natural Resources ("MDNR") in December 2010.  This subsurface fire consumes waste products ranging from a few feet to over a hundred feet deep.  The subsurface fire has caused and continues to cause noxious, putrid, and offensive odors to be released into the Class Area including where Plaintiffs are, and the noxious, putrid, and offensive odors can be smelled for at least 3 miles.

3.      It is unclear whether or when Defendants will be able to put the subsurface fire out.

4.      In addition, there is a threat of future harm in that there is a risk that the subsurface fire will eventually reach, and then cause the dispersion into the Class Area (including where Plaintiffs are) of, harmful and hazardous radioactive materials that are buried in the nearby West Lake Landfill Superfund Site and the North Quarry of the Bridgeton Landfill, further harming Plaintiffs and members of the Classes (defined below).  The subsurface fire that started in the South Quarry of the Bridgeton Landfill is moving toward the North Quarry, which lies between the South Quarry and the West Lake Landfill Superfund Site, and there are radioactive materials in the West Lake Landfill Superfund Site and in the North Quarry.[1]

5.      In short, the Bridgeton Landfill is the quintessential nuisance and Plaintiffs and members of the Classes (defined below) have suffered and continue to suffer a substantial and unreasonable interference with their use and enjoyment of their property and property interests, and with their businesses and work as a proximate result of the nuisance and of Defendants' negligence.  Plaintiffs bring these claims under Missouri state law against Defendants seeking redress for, and injunctive relief to stop, the harms proximately and directly caused by

_____

[1] Exhibit A hereto is a map of the Bridgeton Landfill and West Lake Landfill Superfund Site.

Defendants' negligence and for the nuisance from noxious, putrid, and offensive odors and other emissions emanating from the Bridgeton Landfill and from the present risk to Plaintiffs and the Classes of future harm from the risk the subsurface fire will reach, and then result in the release into the Class Area of, harmful and hazardous radioactive materials.  Defendants' operation of the Bridgeton Landfill in not preventing the subsurface fire, not stopping its spread, and/or not preventing or stopping the resulting noxious, putrid and offensive odors has been and is negligent and unreasonable, and the Bridgeton Landfill has unreasonably and substantially interfered with Plaintiffs' and the Classes' right to peacefully use and enjoy their properties by emitting noxious, putrid, and offensive odors since at least since December 2010 and because of the risk of future harm to Plaintiffs and the Classes from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area.

6.      Defendants, inter alia, (a) negligently failed to prevent the subsurface fire from starting and/or negligently failed to stop it; (b) negligently failed to abate, stop, contain, or reduce both the spread and effects of the subsurface fire, including the resulting odors; and (c) negligently failed to ensure that the subsurface fire will never cause or result in the emission of harmful and hazardous radioactive materials into the Class Area.

## II.      JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because each Plaintiff is of diverse citizenship from at least one Defendant, there are more than 100 members of each class defined below, and the aggregate amount in controversy exceeds $5,000,000.  The Court has personal jurisdiction over Defendants because each transacted and continues to transact business in Missouri and in this district.

8.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Eastern District of Missouri because a substantial part of the acts giving rise to Plaintiffs' claims occurred in this

District and a substantial part of the property that is the subject of this action is located in this

District.

### III.    PARTIES

9.    Plaintiff Kirbi Pemberton is an owner and occupier of real property located at

2393 Wesford Dr., Maryland Heights, MO 63043, which is in the Class Area.

10.    Plaintiff Gina Melissa Wilfong is an owner and occupier of real property located

at 12070 Glenrose Dr., Maryland Heights, MO 63043, which is in the Class Area.

11.    Plaintiff Janice Japa rents and resides at the real property located at 12062

Glenrose Dr., Maryland Heights, MO 63043, which is in the Class Area.

12.    Plaintiff Prestige Electronics, LLC is a Missouri Corporation with its principle

place of business located at 11977 St. Charles Rock Rd., Bridgeton, MO 63044, which is in the

Class Area.  Plaintiff Prestige Electronics, LLC rents the real property located at 11977 St.

Charles Rock Rd. Bridgeton, MO 63044.

13.    Plaintiff Cornell Sparks is an employee of Hussman Corporation, and works at the

property located at 12999 St. Charles Rock Road, Bridgeton, MO 63044, which is within the

Class Area.

14.    Defendant Republic Services, Inc. is a Delaware Corporation, with its principal

place of business in the State Arizona. Defendant Republic Services, Inc. conducts business in

the State of Missouri. At all relevant times, Defendant Republic Services, Inc. was acting

through its agents, servants, and employees, all of whom were acting within the scope and course

of their employment with the express knowledge, consent, control and direction of Defendant

Republic Services, Inc.

15.    Defendant Allied Services, LLC, d/b/a Republic Services of Bridgeton is a

Delaware limited liability company, with its principal place of business in the State of Arizona.

Defendant Allied Services, LLC, d/b/a Republic Services of Bridgeton conducts business in the State of Missouri.  At all relevant times, Defendant Allied Services, LLC, d/b/a Republic Services of Bridgeton was acting through its agents, servants, and employees, all of whom were acting within the scope and course of their employment with the express knowledge, consent, control and direction of Defendant Allied Services, LLC, d/b/a Republic Services of Bridgeton.

16.     Defendant Republic Services, Inc. is the parent company of Defendant Allied Services LLC, d/b/a Republic Services of Bridgeton.

17.     Defendant Bridgeton Landfill LLC is a Delaware limited liability company whose sole member is Allied Waste North America, Inc.  Bridgeton Landfill LLC's principal place of business is located at 13570 St. Charles Rock Road in Bridgeton, St. Louis County, Missouri.  At all relevant times, Defendant Bridgeton Landfill, LLC, was acting through its agents, servants, and employees, all of whom were acting within the scope and course of their employment with the express knowledge, consent, control and direction of Defendant Bridgeton Landfill, LLC.

## IV.    CLASS ACTION ALLEGATIONS[2]

18.     Plaintiffs Kirbi Pemberton and Gina Melissa Wilfong bring this action on behalf of themselves and, under Rule 23(a), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, as representatives of the Class defined as follows:

> All persons or legal entities who currently own and/or owned residential real property within the Class Area at any time from December 2010 through the present (the "Residential Property Owner Class").

---

[2] Plaintiffs may seek to amend one or more of the definitions below at a later time, and may also seek certification under Rule 23(b)(1) and/or (b)(2).  *See, e.g.,* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

19.     Plaintiff Janice Japa brings this action on behalf of herself and, under Rule 23(a),

(b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, as a representative of the Class

defined as follows:

> All persons who are legal tenants or legal occupants and who reside,
> resided, occupy or occupied real property located within the Class Area at
> any time from December 2010 through the present (the "Tenant/Occupant
> Class").

20.     Plaintiff Prestige Electronics, LLC bring this action on behalf of itself and, under

Rule 23(a), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, as a representative of

the Class defined as follows:

> All legal entities that have or have had a place of business within the Class
> Area, and have or have had an interest in or legally occupy real property
> within the Class Area at any time from December 2010 through the
> present (the "Business Class").

21.     Plaintiff Cornell Sparks brings this action on behalf of himself and, under Rule

23(a), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, as a representative of the

Class defined as follows:

> All persons who are or have been employed by and work at businesses
> located within the Class Area at any time from December 2010 through
> the present (the "Employee Class").

22.     Excluded from each of the Residential Property Owner Class, Tenant/Occupant

Class, Business Class, and Employee Class (collectively, "the Classes" or "Class members") are

Defendants and their officers, directors, management, employees, subsidiaries, and affiliates, all

federal governmental entities, the Court and its immediate family.  Also excluded are those who

have previously released all claims against Defendants as alleged herein by virtue of a prior

settlement and release.

23.     Joinder of all the members of the Classes is impracticable.  The proposed Classes

likely include hundreds or thousands of individuals and/or legal entities, including more than

nine thousand members in the Residential Property Owner Class and more than five thousand members in the Tenant/Occupant Class.  Class members may be notified of the pending action by email, mail, and publication as necessary.

24.     The claims of the representative Plaintiff(s) of each Class are typical of the claims of the members of each respective Class.  Plaintiffs, like other members of their respective Classes, have sustained legal injury arising as a result of the nuisance at the Bridgeton Landfill and as a result of Defendants' negligent and wrongful conduct as alleged herein.  Plaintiffs and the members of their respective Classes have suffered and continue to suffer similar or identical injuries proximately and directly caused by the same unlawful conduct engaged in by Defendants.

25.     Plaintiffs will fairly and adequately protect and represent the interests of the respective Class that they represent.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class that they represent

26.     Plaintiffs are represented by counsel who are experienced and competent in the prosecution of class action litigation.

27.     Questions of law and fact common to the members of each Class predominate over questions, if any, that may affect only individual Class members, because Defendants have acted on grounds generally applicable to the entirety of each Class.  Such generally applicable conduct is inherent in Defendants' wrongful, negligent, and unreasonable conduct.

28.     Questions of law and fact common to the Residential Property Owner Class, the Tenant/Occupant Class, and the Business Class include:

   a.     whether Defendants' conduct proximately and directly caused the subsurface fire at the Bridgeton Landfill and/or allowed it to begin;

   b.     whether Defendants' conduct proximately and directly caused or allowed the subsurface fire to continue and spread;

c.     whether Defendants negligently operated the Bridgeton Landfill in such a way that the subsurface fire occurred and is still occurring;

d.     whether Defendants' failure to stop the subsurface fire or stop or limit its spread was negligent, reckless, willful or wanton;

e.     whether the subsurface fire at the Bridgeton Landfill has proximately and directly caused pollution and/or noxious, putrid, and offensive odors and fugitive emissions emanating to the Class Area including where Plaintiffs are;

f.     whether Defendants have operated the Bridgeton Landfill in a manner or permitted conditions at the landfill to be such, that a nuisance was created that has substantially and unreasonably interfered with Plaintiffs' and the Class members' use and enjoyment of their property and property interests;

g.     whether the release of noxious, offensive, and putrid odors from the Bridgeton Landfill into the Class Area including where Plaintiffs are, and/or the risk to Plaintiffs and the Classes that the subsurface fire will reach and then result in the release of harmful and hazardous radioactive material into the Class Area including where Plaintiffs are, has substantially and unreasonably interfered with the Plaintiffs' and the Classes' use and enjoyment of their properties or property interests, or their businesses (as applicable);

h.     how long the subsurface fire and the emission of noxious, putrid, and offensive odors into the Class Area will continue;

i.     whether there is a risk of future harm from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are;

j.     whether the release of noxious, putrid, and offensive odors and/or the threatened release of harmful and hazardous radioactive substances into the Class Area has resulted in the negative stigmatization of the Class Area including where Plaintiffs are;

k.     whether Defendants have breached their duty of care owed to Plaintiffs and the Classes;

l.     whether the Bridgeton Landfill is a nuisance and/or an unreasonable use of land at its present location;

m.     whether the Bridgeton Landfill is a permanent or temporary nuisance;

n.      whether Defendants' misconduct, violations of law, and/or breaches of legal duty proximately and directly caused the injuries alleged by Plaintiffs and the Classes;

o.      whether the nuisance and/or negligent conduct of Defendants is capable of causing fear or emotional distress in Plaintiffs and Class members;

p.      whether Plaintiffs and the Classes are entitled to damages;

q.      whether Plaintiffs and the Classes are entitled to punitive damages and the amount of such punitive damages;

r.      whether Plaintiffs and the Classes are entitled injunctive relief and if so, the form of that relief;

s.      the measure(s) of damages to which Plaintiffs and the Classes are entitled; and

t.      whether damages can be measured in the aggregate.

29.    Questions of law and fact common to the Employee Class include:

a.      whether Defendants' conduct proximately and directly caused the subsurface fire at the Bridgeton Landfill and/or allowed it to begin;

b.      whether Defendants' conduct proximately and directly caused or allowed the subsurface fire to continue and spread;

c.      whether Defendants negligently operated the Bridgeton Landfill in such a way that the subsurface fire occurred and is still occurring;

d.      whether Defendants' failure to stop the subsurface fire or stop or limit its spread was negligent, reckless, willful or wanton;

e.      whether the subsurface fire at the Bridgeton Landfill has proximately and directly caused pollution and/or noxious, putrid, and offensive odors and fugitive emissions emanating to the Class Area including where Plaintiffs are;

f.      how long the subsurface fire and the emission of noxious, putrid, and offensive odors into the Class Area will continue;

g.      whether there is a risk of future harm from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are;

h.      whether the release of noxious, putrid, and offensive odors and/or the threatened release of harmful and hazardous radioactive substances into

9

the Class Area has resulted in the negative stigmatization of the Class Area including where Plaintiffs are;

i.     whether Defendants have breached their duty of care owed to Plaintiff and members of the Class;

j.     whether Defendants' misconduct, violations of law, and/or breaches of legal duty proximately and directly caused the injuries alleged by Plaintiff and the Class;

k.     whether the negligent conduct of Defendants is capable of causing fear or emotional distress in Plaintiffs and Class members;

l.     whether Plaintiff and the Class are entitled to damages;

m.    whether Plaintiff and the Class are entitled injunctive relief and if so, the form of that relief;

n.     the measure(s) of damages to which Plaintiff and the Class are entitled; and

o.     whether damages can be measured in the aggregate.

30.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy because, in addition to other benefits, such treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method to establish liability, resolve common questions and/or obtain damages for claims that might not be practicable or economical to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.  There will be enormous economies to the Court and the parties by litigating the common issues in a class action rather than through repetitious and costly individual litigation.  Plaintiffs' request for injunctive relief also supports certification.

31.     Plaintiffs know of no insurmountable difficulty to be encountered in the maintenance of this action as a class action that would preclude its maintenance as a class action.

## V.     FACTUAL ALLEGATIONS

**A.     Defendants' Corporate Structure(s) and Involvement in the Operations, Activities, and Management at the Bridgeton Landfill**

32.     Defendants have owned and/or operated the Bridgeton Landfill at all times relevant to this Complaint.

33.     Defendant Bridgeton Landfill, LLC is the owner of the Bridgeton Landfill, and together with Defendants Republic Services, Inc. and Allied Waste Services, LLC, d/b/a Republic Services of Bridgeton, operate the Bridgeton Landfill.

34.     At all times relevant herein, Defendant Republic Services, Inc. directed, ordered, or knowingly authorized all activities of Bridgeton Landfill LLC, Allied Services LLC, d/b/a Republic Services of Bridgeton and the day-to-day operations of the Bridgeton Landfill.  This includes direct control over when the decision was made to report the subsurface fire to the MDNR, the Defendants' actions in response to evidence indicating that there may be a subsurface fire at the Bridgeton Landfill, the subsurface fire itself, and direct control over the management of gases, odors, hazardous wastes, water pollutants, air pollutants, and leachate being generated by or emanating from the Bridgeton Landfill.

35.     Defendant Republic Services, Inc. is the parent corporation of Bridgeton Landfill LLC and Allied Services LLC, d/b/a Republic Services of Bridgeton, and completely dominates the finances, control, and business practices of Bridgeton Landfill LLC and Allied Services LLC, d/b/a Republic Services of Bridgeton such that neither company has a separate mind or existence of its own.

36.     Bridgeton Landfill LLC and Allied Services LLC, d/b/a Republic Services of Bridgeton have inadequate assets compared to the potential liability and threat to human health posed by the Bridgeton Landfill.

37.     Republic Services, Inc. and/or its predecessors-in-interest have maintained Bridgeton Landfill LLC in an inadequate and undercapitalized state.

38.     Defendant Republic Services, Inc., either directly or indirectly, has financed Defendants' response to the subsurface fire, in addition to the management of air pollution, gas, and odors emanating from the Bridgeton Landfill.  For example, Defendant Republic Services, Inc. has paid, directly or indirectly, to MDNR, a portion of MDNR's oversight costs related to the Bridgeton Landfill.

39.     At all times relevant herein, Defendant Republic Services, Inc., has maintained complete operational control over Bridgeton Landfill LLC, Allied Services LLC, d/b/a Republic Services of Bridgeton, and the Bridgeton Landfill, such that Bridgeton Landfill LLC and Allied Services LLC, d/b/a Republic Services of Bridgeton simply functioned as a façade for Republic Services, Inc.  For example, Republic Services, Bridgeton Landfill LLC, and Allied Services share corporate officers and Republic's executives have authority to sign corporate documents on behalf of Bridgeton Landfill, LLC.  In addition, the Bridgeton Landfill LLC website even includes the Republic Services, Inc. logo and 2014 copyright.

40.     At all times relevant herein, individuals employed directly by Defendant Republic Services, Inc., have maintained direct operational/managerial control over the day-to-day operation/management of Bridgeton Landfill LLC, the Bridgeton Landfill, Defendants' response to the subsurface fire, and the management of odors, air pollution, and hazardous waste from the Bridgeton Landfill.

41.     Defendants' negligent acts and the nuisance resulting from the subsurface fire as set forth herein all occurred during a time when Republic Services, Inc. completely dominated the finances, control, and decision-making of Bridgeton Landfill LLC and Allied Services LLC,

d/b/a Republic Services of Bridgeton, and the management of the Bridgeton Landfill itself, such that Bridgton Landfill LLC and Allied Services LLC, d/b/a Republic Services of Bridgeton are each the alter ego of Republic Services, Inc.

42.     Republic Services, Inc., Bridgeton Landfill LLC, and Allied Services LLC, d/b/a Republic Services of Bridgeton have such a unity of interest and operations that if their acts are treated as the acts of Bridgeton Landfill LLC and Allied Services LLC, d/b/a Republic Services of Bridgeton alone, Plaintiffs and the Classes will suffer an inequitable and unjust result.

**B.     The Bridgeton Landfill**

43.     The Bridgeton Landfill is an unlined former rock quarry that was filled with residential and commercial waste, in addition to other waste sources.  The Bridgeton Landfill stopped accepting waste on or about December 31, 2004.

44.     The Bridgeton Landfill lies within the boundaries of the West Lake Landfill Superfund Site.

45.     The West Lake Landfill Superfund Site (also known as "Operable Unit One" or "OU-1") contains a significant amount (thousands of tons) of illegally deposited radioactive waste.

46.     Defendants previously admitted, in their answers in *Buck, et al. v. Republic Services, Inc., et al.*, Case No. 4:13-CV-00801-TCM (E.D. Mo.), that "low-level radiological material was deposited and used as cover at the West Lake Landfill Superfund Site."

47.     The Bridgeton Landfill itself contains materials that are radiologically impacted, radioactive and/or emit radiation.  In fact, a recent Environmental Protection Agency report indicated that the North Quarry of the Bridgeton Landfill, which is located between the South Quarry and the West Lake Landfill Superfund Site (which contains the bulk of the radioactive

materials), contains radiologically impacted materials, radioactive materials and/or materials that emit radiation.

**C.**   **The Subsurface Fire**

48.   No later than May 2009, monitoring of Bridgeton Landfill gas indicated the presence of subsurface oxidation.  Defendants were aware of the results of this monitoring no later than May 2009. Monthly monitoring reports of Bridgeton Landfill sent to Defendants again indicated the presence of subsurface oxidation in July 2009, August 2009, September 2009, October 2009, November 2009, February 2010, March 2010, April 2010, May 2010, June 2010, August 2010, September 2010, October 2010, and November 2010.  Moreover, beginning no later than the February 2010 report, the monitoring reports expressly stated that elevated levels of carbon monoxide (a sign of a subsurface fire, subsurface oxidation event, subsurface smoldering event, and/or subsurface pyrolysis) "does raise a concern."

49.   Indeed, according to monitoring in November 2009, which was sent to Defendants, the subsurface oxidation was spreading.

50.   No later than December 2009, there was a report that Bridgeton Landfill was emitting carbon monoxide exceeding regulatory requirements.  Excess carbon monoxide is one of the signs of a subsurface fire, subsurface oxidation event, subsurface smoldering event, and/or subsurface pyrolysis.

51.   No later than the fall of 2010, Bridgeton staff noticed that some of the landfill gas extraction wells in the South Quarry portion of the landfill were experiencing increasing wellhead temperatures and changes in gas composition, including decreasing methane concentrations.  A decrease in methane production, and increase in temperature and carbon monoxide can be evidence of a subsurface fire, or a precursor or warning sign that a subsurface fire is about to occur.

52.     In December 2010, some or all of the Defendants first reported to MDNR that the Bridgeton Landfill was experiencing elevated temperatures on some methane gas extraction wells, evidencing a subsurface fire or pyrolysis.

53.     Since at least December 2010, the subsurface fire has continued and intensified as evidenced by rapid surface soil and landfill debris settlement, increased odors, elevated gas levels, and high landfill temperatures.

54.     Since at least December 2010 the subsurface fire has continued to spread through the South Quarry.

55.     Since at least December 2010, as a result of the subsurface fire, the Bridgeton Landfill has emitted and continues to emit noxious, putrid, and offensive odors into the Class Area including where Plaintiffs are.

**D.      The State of Missouri Brings Suit Over the Subsurface Fire**

56.     On or about March 17, 2013, the Attorney General of Missouri ("AG") and the Missouri Department of Natural Resources ("MDNR") (collectively, the "State") brought suit in Missouri state court against Defendants Republic Services, Inc., Allied Services, LLC, d/b/a Republic Services of Bridgeton and Bridgeton Landfill, LLC for alleged violations of Missouri Solid Waste Management, Hazardous Waste Management, Clean Water, Air Conservation, and Hazardous Waste Management Laws, as well as claims for nuisance, costs, and natural resource damages.

57.     The State's Petition for Public Nuisance, Injunctive Relief, Civil Penalties, Cost Reimbursement, and Natural Resource Damages ("First Complaint") alleges odors and emissions caused by the underground landfill fire unreasonably interfere with residents and business owners' use and enjoyment of their property.

58.     The State's First Complaint also alleges that (i) on at least one occasion in January 2013, a black liquid leachate flowed out of the Bridgeton Landfill's leachate collection system onto the surface of the ground, (ii) the flowing leachate entered a forested area and an intermittent stream near the Bridgeton Landfill, (iii) leachate is collecting in the subsurface of the landfill, traveling into the limestone rock that makes up the bed of the landfill, and flowing into groundwater, and (iv) when tested, leachate from the Bridgeton Landfill violates the Toxicity Characteristic Leaching Procedure under the Missouri Hazardous Waste Management Law.

59.     On October 10, 2014, the State filed a First Amended Petition for Negligence, Strict Liability, Punitive Damages, Public Nuisance, Injunctive Relief, Civil Penalties, Cost Reimbursement and Natural Resource Damages ("Amended Complaint") against Defendants Republic Services, Inc., Allied Services, LLC, d/b/a Republic Services of Bridgeton and Bridgeton Landfill, LLC.

60.     The State's Amended Complaint added claims for punitive damages and strict liability.  In addition, the State's Amended Complaint also added allegations, inter alia, that "A recent EPA report indicated that the North Quarry of the Bridgeton Sanitary Landfill contains radiologically impacted materials, radioactive materials and/or materials that emit radiation."

61.     The State's Amended Complaint added allegations of agency liability and veil piercing for Republic Services, Inc.'s control of Bridgeton Landfill LLC, Allied Services LLC, d/b/a Republic Services of Bridgeton and the Bridgeton Landfill.

62.     The State's Amended Complaint added new counts including (i) negligent failure to isolate, contain, suppress, inhibit and/or extinguish the landfill fire, (ii) negligent failure to properly operate and maintain the gas collection and control system, (iii) strict liability/ultra-hazardous activity.

16

**E.**     **Risk of Future Emissions or Releases of Radioactive Materials**

63.     Plaintiffs and the Classes face a risk of future harm from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area.

64.     Because of the nature of the radioactive material contained in the West Lake Landfill Superfund Site and the process of radioactive decay (which results in the creation of "daughter" products that are themselves radioactive), the radioactivity at the site will only increase for the foreseeable future.

65.     There are no distinct separation barriers within the North and South Quarry that might serve as a separation barrier between the area experiencing the subsurface fire and other areas.

66.     The West Lake Landfill Superfund Site has both high liquefaction[3] potential and is near areas that have significant landslide potential.  This means that both the landfill and any protective levees can slump or fail during an earthquake, during rainy periods, or during flooding, and the landfill and protective levees would be especially vulnerable if such conditions occurred at the same time.

67.     A prominent fire commander monitoring the subsurface fire has called for the removal of nuclear waste from the West Lake Landfill Superfund Site based on the risk of future emissions or releases of radioactive materials as the subsurface fire spreads.

68.     These risks include but are not limited to:

  a.     the subsurface fire spreading from the South Quarry into the North Quarry, and then to the West Lake Landfill Superfund Site;

---

[3] Liquefaction is a phenomenon in which the strength and stiffness of a soil is reduced by earthquake shaking or other rapid loading.

    b.      an independent subsurface fire starting in the North Quarry;

    c.      subsurface fires can result in landfill collapse, landslides and slumping, endangering personnel and exposing dangerous materials to the surface;

    d.      landfill fires have high explosion risk because of methane, gas cylinders, and drums;

    e.      high temperatures and smoke could mobilize radionuclides into surface water, groundwater and air.  For example, toxic chemicals and radionuclides including alpha-emitting radon isotopes can become attached to carbon-rich particulates, then disseminated in smoke; and

    f.      explosions, collapse, and other problems can unearth radionuclides, which can then spread over large areas as airborne dust or in water.

69.     In a letter dated October 7, 2014, MDNR informed Defendants that MDNR's evaluation of monitoring data revealed a "continuing upward trend in temperature in the neck area of the Bridgeton Landfill[,]" which is between the North and South Quarries.  MDNR called for additional monitoring to improve "evaluation of the northward migration of the subsurface fire and for continued monitoring of impacts to landfill infrastructure from the subsurface fire."

70.     During the spring of 2014, the U.S. Environmental Protection Agency requested that the U.S. Geological Survey review data from 2012-2014 comprehensive groundwater sampling done at the West Lake Landfill Superfund Site.

71.     The U.S. Geological Survey on December 17, 2014, indicated that numerous groundwater wells surrounding the North and South Quarries of landfill were contaminated with landfill leachate. Twenty percent of these wells contained levels of radium above maximum contaminate levels. This evidence demonstrates Defendants have not isolated or contained the subsurface fire or its effects.

72.     In addition to the subsurface fire migrating or spreading from the South Quarry into the areas of the North Quarry containing radioactive materials, another risk to the Plaintiffs and the Classes is another, independent subsurface fire starting in the North Quarry in or near

areas containing radioactive materials.  According to an expert affidavit filed by the State (see paragraph 73, below), data gathered in December 2014, has indicated a possible second subsurface fire or subsurface oxidation in the far northeast section of the North Quarry "in close proximity to the Westlake Landfill which is contaminated with nuclear waste."

73.    As part of an "Emergency Motion to Compel Defendants to Protect and Preserve Evidence," the State submitted two affidavits from experts, which stated, inter alia:

a.    The Bridgeton Landfill is a former rock quarry with waste depths that have varied from 80 to 320 feet.  The landfill itself is contained within a Superfund site that contains illegally deposited nuclear waste, the origins of which lie with the Manhattan Project. Much of the radiologically impacted material, or RIM, is deposited in the Westlake Landfill which sits immediately to the north of the Bridgeton Landfill. RIM has also been located in the northern half of the Bridgeton Landfill which is also known as the "North Quarry."  The area where the known RIM is located has been designated "OU-1" by the Environmental Protection Agency.

b.    If the fire reaches the RIM, this could lead to the off-site migration of RIM into the community.  Contact between the fire and the RIM could also increase the generation of radon gas which poses a public health risk.

c.    There are multiple elements that are essential to tracking the movement or development of a subsurface fire.  A decrease in methane production, and increase in temperature and carbon monoxide can be evidence of a subsurface fire, or a precursor or warning sign that a subsurface fire is about to occur. Increases in nitrogen and oxygen are also indicative of air intrusion into the landfill. Intrusion of oxygen into the waste mass of a landfill can contribute to or cause a subsurface fire.

d.    In December 2014, data submitted to the MDNR by the Defendants showed changes in the gas composition and temperature data in the far northeast section of the North Quarry near Operable Unit 1 Area 1.  This included a significant decrease in methane, and an increase in nitrogen[.]

e.    The presence of carbon monoxide was detected in five [Gas Extraction Wells ("GEWs")] in the North Quarry.  Of particular concern of these five wells are: GEW-2 had no prior carbon monoxide reported since January 2014, GEW 4 had no prior carbon monoxide reported since at least June of 2013, and GEW-8 had no prior carbon monoxide reported since August of 2014.  This data indicates a change in conditions, air intrusion, and the possibility of a subsurface fire, or the precursor to a subsurface fire in close proximity to the Westlake Landfill which is contaminated with nuclear waste.

19

74.     On June 5, 2015, Bridgeton Landfill, through its consultants, informed MDNR that accelerated settlement has occurred in the South Quarry area of the closed landfill due to the subsurface fire.  Increased settlement is an indicator of a subsurface fire, subsurface oxidation event, subsurface smoldering event, and/or subsurface pyrolysis.

**F.     Harm to Plaintiffs and Members of the Classes**

75.     As a direct or proximate result of the subsurface fire at the Bridgeton Landfill, the resulting nuisance, and Defendants' wrongful and negligent conduct, Plaintiffs and members of the Classes were and continue to be harmed.

76.     The noxious, putrid, and offensive odors emanating from the Bridgeton Landfill and/or the risk or threat to Plaintiffs and the Classes that the subsurface fire will reach and then result in the release of harmful and hazardous radioactive material into the Class Area have unreasonably and substantially interfered with Plaintiffs' and the Classes' use and enjoyment of their property and property interests, their right to breathe clean air, and their ability to work and run their businesses.

77.     As a result of the nuisance at the Bridgeton Landfill and of Defendants' negligent and wrongful conduct, Plaintiffs and the Classes have suffered annoyance, discomfort, fear and emotional distress, damage to property, and economic loss including loss of property/rental value, lost profits, lost income and wages, and other losses to be proved at trial, including as a result of negative stigmatization.

### VI.     CLAIMS FOR RELIEF

**COUNT 1:  NEGLIGENCE UNDER MISSOURI STATE LAW**
**(Brought by All Plaintiffs on Behalf of the Residential Property Owner Class, Tenant/Occupant Class, Business Class, and Employee Class Against All Defendants)**

78.     All previous allegations are incorporated into this count as though fully set forth herein.

79.     Defendants (a) negligently failed to maintain and operate the Bridgeton Landfill so as to prevent the subsurface fire from starting or occurring, and/or (b) negligently failed to stop, reduce, contain or minimize the spread of the subsurface fire once it started, and likewise negligently failed to stop, reduce, minimize or contain the resulting noxious, putrid, and offensive odors emanating from the landfill and harming Plaintiffs and Class members, and (c) negligently created or allowed the creation of a risk of future harm to Plaintiffs and members of the Classes from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area.

80.     Defendants owe and owed a duty to Plaintiffs and members of the Classes to use reasonable care in maintaining and operating the Bridgeton Landfill.

81.     Defendants owe and owed Plaintiffs and the Classes a duty to operate and maintain the Bridgeton Landfill in a manner to prevent the start or occurrence of a subsurface fire at the Bridgeton Landfill and/or stop its spread because it was foreseeable that a subsurface fire at the Bridgeton Landfill could proximately and directly cause harm to Plaintiffs and members of the Classes, including through release of noxious, putrid, and offensive odors into the Class Area including where Plaintiffs are and by creating a risk to Plaintiffs and the Classes of future harm from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area.

82.     Defendants breached their duty to Plaintiffs and members of the Classes by acts and/or omissions, including negligent operation of the Bridgeton Landfill in a manner that permitted a subsurface fire to begin or occur and/or to then continue and spread.

83.     Defendant Republic Services, Inc. has experienced prior subsurface fires at landfills Republic Services, Inc., and/or its subsidiaries or predecessors-in-interest own and/or operate in at least Ohio, Illinois, Tennessee, and California.

84.     Due to its experience with subsurface fires at landfills owned and/or operated by Defendant Republic Services, Inc., its subsidiaries, or predecessors-in-interest, Defendant Republic Services, Inc., knew or should have known that if immediate steps were not taken to isolate, contain, suppress, inhibit, and/or extinguish the subsurface fire at the Bridgeton Landfill, the subsurface fire could proximately and directly cause emissions of noxious, putrid, and offensive odors into the Class Area including where Plaintiffs are and create a risk of future release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are.

85.     Defendants had a duty to immediately take any and all actions necessary to prevent, minimize, isolate, contain, suppress, inhibit, reduce the spread of, and/or extinguish the subsurface fire due to the foreseeability of the threat of noxious, putrid, and offensive odors being released off-site and into the Class Area including where Plaintiffs are, and the foreseeability that the subsurface fire would result in the risk to Plaintiffs and the Classes of the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are.

86.      Defendants reasonably should have known or foreseen that if they did not take immediate and effective steps to isolate, contain, suppress, inhibit, and/or extinguish the subsurface fire, that it would likely spread and create a risk of the subsurface fire reaching and then resulting in the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are.

87.     Defendants breached their duty to Plaintiffs and Classes by acts and/or omissions, including negligent operation of the Bridgeton Landfill in a manner that permitted the subsurface fire to continue to burn and to spread, worsening the resulting noxious, putrid, and offensive odors and creating a threat of future harm from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area.

88.     As alleged in more detail above, by no later than May 2009, Defendants knew that there was a subsurface fire, subsurface oxidation event, subsurface smoldering event, and/or subsurface pyrolysis at the Bridgeton Landfill.  A December 2009 report indicated elevated levels of carbon monoxide (a sign of a subsurface fire) and beginning no later than February 2010, monthly monitoring reports expressly and repeatedly told Defendants that elevated levels of carbon monoxide "raise a concern."

89.     Defendants breached their duty of care to Plaintiffs and the Classes because they knew or should have known that there was a subsurface fire at the Bridgeton Landfill, but failed to take immediate and effective steps to minimize, reduce, or stop the spread of the subsurface fire or minimize, reduce, or stop the resulting releases of noxious, putrid, and offensive odors into the Class Area including where Plaintiffs are, or prevent the resulting risk to Plaintiffs and the Classes of the future release of harmful and hazardous radioactive materials into the Class Area.

90.     Defendants' failure to prevent the occurrence, spread, and/or worsening of the subsurface fire at the Bridgeton Landfill was willful, wanton, and was done with reckless disregard for Plaintiffs and members of the Classes.

91.     Defendants' failure to prevent the occurrence of a subsurface fire proximately and directly caused Plaintiffs and the Classes to suffer damages, including from the noxious, putrid,

and offensive odors emanating from the Bridgeton Landfill and from the creation of a risk of future harm from the subsurface fire reaching buried radioactive waste and thereby causing the release of harmful and hazardous radioactive material into the Class Area.

92.     Defendants' failure to take immediate and effective action to isolate, contain, suppress, inhibit, and/or extinguish the subsurface fire at least by May 2009 and certainly no later than December 2010 caused or allowed the subsurface fire at the Bridgeton Landfill to continue, migrate, and spread and to release noxious, putrid, and offensive odors that have harmed and continue to harm Plaintiffs and members of the Classes, or at a minimum caused or allowed the subsurface fire at the Bridgeton Landfill to release more noxious, putrid, and offensive odors than it otherwise would have.

93.     Defendants' failure to take immediate action to isolate, contain, suppress, inhibit, and/or extinguish the subsurface fire at least by May 2009 and certainly no later than December 2010 created or allowed the creation of a risk to Plaintiffs and the Classes of future harm from the risk that the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are.

94.     The foregoing negligent acts and/or omissions by Defendants are the proximate and direct cause of injuries suffered by Plaintiffs and the Classes, injuries that were or reasonably should have been foreseeable to Defendants.

95.     Based on the proximity of Plaintiffs' and Class members' residences, businesses, and/or places of work to the Bridgeton Landfill, it was reasonably foreseeable that Plaintiffs and the Classes would be injured by the subsurface fire at the Bridgeton Landfill, including by the noxious, putrid, and offensive odors emanating from the landfill resulting from the subsurface

fire, and by the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are.

96.     Plaintiffs and members of the Classes have been injured by Defendants' negligence as described above. Plaintiffs and members of the Classes are unable to breathe fresh and clean air, and have been injured by the noxious, putrid, and offensive odors emanating from the Bridgeton Landfill over a period of years.  They also face a risk of future harm from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area.

97.     As a result of Defendants' wrongful and negligent conduct, Plaintiffs and the Classes have suffered annoyance, discomfort, fear and emotional distress, damage to property, and economic loss including loss of property/rental value, lost profits, lost income and wages, and other losses to be proved at trial, including as a result of negative stigmatization.

98.     Defendants' conduct was outrageous because it showed reckless indifference to the rights of Plaintiffs and members of the Classes.

### COUNT 2:  TEMPORARY NUISANCE UNDER MISSOURI STATE LAW
**(Brought by Plaintiffs Kirbi Pemberton, Gina Melissa Wilfong, Janice Japa, and Prestige Electronics, LLC on Behalf of the Residential Property Owner Class, Tenant/Occupant Class, and Business Class Against All Defendants)**

99.     Plaintiffs incorporate by reference all preceding paragraphs herein.

100.     As a result of Defendants' conduct and the noxious, putrid, and offensive odors that have been and are being released from the Bridgeton Landfill into the Class Area including where Plaintiffs are, and/or as a result of the risk of future harm from the risk that the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are, Plaintiffs and the Classes have suffered and are

suffering a substantial and unreasonable interference with the use and enjoyment of their property and property interests, and businesses (as applicable).

101.    The noxious, putrid, offensive odors, pollution, and/or emissions emanating from the subsurface fire at the Bridgeton Landfill and being released into the Class Area are the direct and proximate result of Defendants' intentional, willful and wanton, or negligent conduct in failing to prevent or promptly stop the subsurface fire at the Bridgeton Landfill.

102.    The interference with Plaintiffs' and Class members' use and enjoyment of their property resulting from the emission of noxious, putrid, offensive odors from the Bridgeton Landfill and/or from the risk of future harm from the risk the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area, is both substantial and unreasonable.

103.    Defendants' use of the Bridgeton Landfill property was, as set forth above, unreasonable.

104.    The Bridgeton Landfill has been a nuisance since at least December 2010 and continuing through the present.

105.    Plaintiffs have been injured by the nuisance at the Bridgeton Landfill as described above.  As a result of Defendants' negligence and the nuisance at the Bridgeton Landfill and of Defendants' wrongful conduct, Plaintiffs and the Classes have suffered annoyance, discomfort, fear and emotional distress, damage to property, and economic loss including loss of property/rental value, lost profits, lost income and wages, and other losses to be proved at trial, including as a result of negative stigmatization.

106.    Defendants knowingly and willfully permitted the nuisance to continue, and acted with reckless indifference to Plaintiffs and the members of the Classes.

107.    Plaintiffs seek punitive damages against Defendants for the willful and knowing continuation of the nuisance described herein.

### COUNT 3:  PERMANENT NUISANCE UNDER MISSOURI STATE LAW
**(Brought by Plaintiffs Kirbi Pemberton, Gina Melissa Wilfong, Janice Japa, and Prestige Electronics, LLC on Behalf of the Residential Property Owner Class, Tenant/Occupant Class, and Business Class Against All Defendants)**

108.    Plaintiffs incorporate by reference all preceding paragraphs herein.

109.    As a result of Defendants' conduct including their negligent conduct, and the noxious, putrid, offensive odors that have been and are being released from the Bridgeton Landfill into the Class Area including where Plaintiffs are, and/or the risk to Plaintiffs and the Classes of future harm from the risk that the subsurface fire will reach and then result in the release of harmful and hazardous radioactive materials into the Class Area including where Plaintiffs are, Plaintiffs and the Classes have suffered and are suffering a substantial and unreasonable interference with the use and enjoyment of their property and property interests and businesses (as applicable), a classic nuisance which is ongoing and is expected to continue into the future.

110.    The nuisance as described above is the direct and proximate result of Defendants' intentional, willful and wanton, or negligent conduct in failing to prevent or promptly stop the subsurface fire at the Bridgeton Landfill.

111.    The interference with Plaintiffs' and Class members' use and enjoyment of their property resulting from the nuisance as described herein and from Defendants' failure to end or eliminate it is both substantial and unreasonable.

112.    Defendants' use of the Bridgeton Landfill property was, as set forth above, unreasonable.

113.    The Bridgeton Landfill has been a nuisance since at least December 2010 and continuing through the present.

114.    Plaintiffs have been injured by Defendants' nuisance as described above.  As a result of the nuisance at the Bridgeton Landfill and of Defendants' negligence and unreasonable use of the property at the Bridgeton Landfill, Plaintiffs and the Classes have suffered annoyance, discomfort, fear and emotional distress, damage to property, and economic loss including loss of property/rental value, lost profits, lost income and wages, and other losses to be proved at trial, including as a result of negative stigmatization.

115.    Defendants knowingly and willfully permitted the nuisance to continue, and acted with reckless indifference to Plaintiffs and the members of the Classes.

116.    Plaintiffs seek punitive damages against Defendants for the willful and knowing continuation of the nuisance described herein.

117.    Despite their efforts to date, Defendants thus far have not extinguished, contained, or stopped the subsurface fire.  Nor have Defendants stopped the release of noxious, putrid, offensive odors into the Class Area.  Nor have Defendants eliminated the risk that the subsurface fire will reach and result in the release of harmful and hazardous radioactive materials into the Class Area.

## VII.   DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, respectfully request that the Court:

A.      Determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(3), and/or (c)(4), and declare the Plaintiffs as the representatives of the Classes and certify each Class;

B.      Issuing proper notice to the Classes;

28

C.      Enter joint and several judgments against Defendants and in favor of Plaintiffs and the Classes;

D.      Award Plaintiffs and the Classes compensatory damages in an amount to be determined at trial;

E.      Award Plaintiffs and the Classes punitive damages in an amount to be determined at trial;

F.      Award Plaintiffs and the Classes costs and prejudgment interest as appropriate;

G.      Grant an injunction requiring Defendants to (a) extinguish the subsurface fire or completely abate its effects, and (b) eliminate all risk that the subsurface fire will ever reach and/or cause the dispersion of harmful and hazardous radioactive materials into the Class Area; and

H.      Grant any and all such other and further relief as this Court deems just and proper.

## VIII.   <u>JURY DEMAND</u>

Pursuant to Fed. Civ. P. 38, Plaintiffs, on behalf of themselves and the proposed Classes, demand a trial by jury on all issues so triable.


Dated:  June 30, 2015                                    Respectfully submitted,

/s/ David F. Sorensen
David F. Sorensen
Caitlin G. Coslett
Nicholas Urban
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000 (phone)
(215) 875-4604 (fax)
dsorensen@bm.net
ccoslett@bm.net
nurban@bm.net

Daniel P. Finney
Finney Law Office, LLC
1735 South Big Bend Blvd.
St. Louis, Mo. 63117
(314) 646-0300 (office)
(314) 646-0303 (fax)
dan@finneylawoffice.com
www.finneylawoffice.com